UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARNELL MCGARY, | Case No.  C05-5376RBL |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| RONALD CULPEPPER, *et al.*, | Noted for August 18, 2006 |
| Defendants. | |

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  This matter is before the court on the following dispositive motions: (i) Defendants, Kimberly Acker and Victoria Roberts, motion to dismiss (Doc. 31); (ii) Defendants, Henry Richards, Ph.D., and Leslie Sziebert, M.D.,motion for an order of judgment on the pleadings dismissing Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c), or in the alternative, an order directing Plaintiff to file an amended complaint that complies with the Federal Rules of Civil Procedure, and specifically with Fed. R. Civ. P. 8(a) (Doc. 57); and (iii) Defendants, Judge Culpepper, Stephen Gregorich, and Keith Barnes, motion for summary judgment (Doc. 63),

On June 7, 2005, Plaintiff, Darnell McGary, submitted his civil rights complaint as well as a motion for leave to proceed *in forma pauperis*.  The Court denied Mr. McGary's motion to proceed pro se, however, he filed a motion for reconsideration and ultimately, an appeal to the Ninth Circuit.   The Court granted plaintiff leave to proceed *in forma pauperis* on October 19, 2005, and an order directing service by

1  U.S. Marshall was granted on March 3, 2006.

2         Plaintiff is in custody of the State of Washington, and he resides at the Special Commitment Center

3  ("SCC") on McNeil Island.   Prior to his placement at the SCC, Mr. McGary was incarcerated for Burglary

4  in the First Degree and Rape in the First Degree. He was released from Washington State Department of

5  Corrections custody on April 6, 1998, but when a jury of the Pierce County Superior Court subsequently

6  found him to be a "sexually violent predator", Mr. McGary was civilly committed to the SCC under RCW

7  71.09, on or about February 5, 2004.  On September 7, 2004 he was released on a Less Restrictive

8  Alternative (LRA) to the Secure Community Transition Facility (SCTF).  Mr. McGary violated the terms

9  of his LRA and was returned to the SCC sometime in early March. His LRA was officially revoked on

10 April 5, 2005 and he remains at the SCC.   It appears that the bulk of Mr. McGary's Complaint raises

11 claims  in regard to his current confinement at the SCC and/or the process of his LRA revocation.

12        Defendants Acker and Roberts are employees of the Washington State Department of Corrections

13 and they each move to dismiss plaintiff's complaint on the basis that Mr. McGary has failed to make any

14 allegation indicating either one of them personally participated in depriving Mr. McGary of a constitutional

15 or federally protected civil right.  Defendants Acker and Roberts also argue the complaint should be

16 dismissed on the basis of the expiration of the applicable three-year statute of limitations.

17        Defendants Richards and Sziebert are employees of Washington State Department of Social and

18 Health Services, which manages and operates the SCC.  Similar to Defendants Acker and Roberts,

19 Defendants Richards and Sziebert argue Mr. McGary has failed to make any allegations indicating either of

20 them caused or personally participated in any act violating his constitutional or federally protected civil

21 rights.

22        Defendants Judge Ronald Culpepper, Stephen Gregorich, and Keith Barnes move the Court for

23 summary judgment on the grounds that (1) no genuine issue of material fact exists with regard to

24 Defendant Judge Culpepper's actions as a judicial officer in proceedings in which Plaintiff was a party, (2)

25 no genuine issue of material fact exists with regard to Defendant Gregorich's actions as a judicial officer in

26 proceedings in which Plaintiff was a party, (3) no genuine issue of material fact exists with regard to

27 Defendant Barnes' involvement in this action due to an absence of any mention of Defendant Barnes in the

28 substance of Plaintiff's Complaint or any other document related to this action.

After carefully reviewing the motion, plaintiff's responses thereto, and supporting documentation, the court issues the following report finding no material issues of fact, and the undersigned recommends that the Court grant each of the three dispositive motions in favor of defendants.  In addition the undersigned recommends summary dismissal of any claims or allegations made against Defendant McClung.   In sum, the Court should dismiss this matter in its entirety.

As noted above Plaintiff, Darnell McGary, is a resident of the SCC on McNeil Island.  According to the Complaint, Mr. McGary seeks declaratory, compensatory and injunctive relief based on the allegation that the conditions and his treatment at SCC have violated his U.S. Constitutional and federally protected civil rights.  For example, Mr. McGary alleges he was initially hired to work for United Parcel Service ("UPS") when he was transferred to the Secure Community Transition Facility, but was ultimately turned down after the escort procedures were explained to UPS staff.  Plaintiff complains that his assigned escorts unfairly interfered with his civil liberties and policed, rather than just monitored his actions.  Plaintiff states that he was not allowed to "talk, look, or otherwise confer with people while out in the community."  For the reasons discussed below, the Court should dismiss plaintiff's claims and allegations made against the defendants named in his complaint.

## DISCUSSION

*A. PROSECUTORIAL IMMUNITY & JUDICIAL IMMUNITY*

Judge Ronald Culpepper and Stephen Gregorich are entitled to immunity from the allegations made by Mr. McGary in his Complaint.  Judicial officers are immune from liability for damages under 42 U.S.C. § 1983 for acts taken within their judicial jurisdiction.  Pierson v. Ray, 386 U.S. 547, 554-555 (1967). "Judicial immunity applies 'however erroneous the act may have been, and however injurious the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'"  Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). (quoting Cleavinger v. Saxner, 474 U.S. 193 (1985). Prosecutors are also entitled to absolute immunity from liability for damages under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 427 (1976).  Prosecutorial immunity protects a prosecutor who "acts within his or her authority and in a quasi-judicial capacity."  Ashelman, 793 F.2d at 1076 (citing Imbler, 424 U.S. at 430-31).  "If the prosecutor acts as an advocate 'in initiating a prosecution and in presenting the State's case,' absolute immunity is warranted."  Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675,

1  678 (9th Cir. 1984) (quoting Imbler, 424 U.S. at 430-431).  Prosecutorial immunity applies "even if it

2  leaves 'the genuinely wronged defendant without civil redress against a prosecutor whose malicious or

3  dishonest action deprives him of liberty.'"  Ashelman, 793 F.2d at 1075.

4       Judge Ronald Culpepper is a Pierce County Superior Court Judge for the State of Washington.

5  Judge Culpepper is named by Plaintiff in the Complaint based on his role as the judicial officer who

6  presided over Mr. McGary's revocation proceedings in April 2005.  Plaintiff alleges Judge Culpepper

7  abused his judicial discretion when he found Mr. McGary in violation of the terms and conditions of his

8  release to the Secure Community Transition Facility.  Defendant Stephen Gregorich was named in the

9  Complaint as a Deputy Pierce County Prosecutor, responsible for prosecuting referrals under the "sexually

10  violent predator" statute, RCW 71.09.  Plaintiff alleges Mr. Gregorich fabricated evidence against Mr.

11  McGary.

12       Plaintiff's claims against Judge Culpepper are based on Judge Culpepper's actions and decisions

13  made in his role as a judicial officer and must be dismissed.  In the Order of Commitment dated February 5,

14  2004, Judge Culpepper carefully and deliberately set forth conclusions of fact and law from which he

15  determined that Plaintiff qualified as a sexually violent predator under RCW 71.09. (See Exhibit 1, p. 3-5,

16  filed in support of Defendants' motion for summary judgment (Doc. 63).)  Under RCW 71.09, a "sexually

17  violent predator means any person who has been convicted of or charged with a crime of sexual violence

18  and who suffers from a mental abnormality or personality disorder which makes the person likely to engage

19  in predatory acts of sexual violence if not contained in a secure facility." RCW 71.09.020(16).  In April

20  2005, Judge Culpepper presided over Mr. McGary's challenge to the revocation of his release to the

21  Secure Community Transition Facility.  Judge Culpepper concluded that the revocation was proper, finding

22  (i) Mr. McGary had refused to follow the treatment and advice of Dr. Brian Judd and (ii) Mr. McGary

23  refused to take his anti-psychotic medication.  Judge Culpepper's actions (determining whether Plaintiff fit

24  the definition of a sexually violent predator and whether the revocation of Mr. McGary's release to less

25  restrictive housing was improper) were performed in his capacity as a judicial officer within the scope of

26  his authority and within the immunity of a court official.  Judge Culpepper is entitled to judicial immunity.

27

28       Similarly, Mr. Gregorich, who was properly performing acts within his prosecutorial role, is entitled

REPORT AND RECOMMENDATION
Page - 4

1  to immunity from suit.  In order to show probable cause that Plaintiff met the definition of a sexually

2  violent predator, Prosecutor Gregorich needed only to show that the Plaintiff (1) had previously been

3  convicted of a sexually violent crime; and (2) suffers from a mental abnormality or personality disorder

4  which makes the person likely to engage in acts of sexual violence if not confined. (See Exhibit 6, p. 2,

5  lines 13, filed in support of Defendants' motion for summary judgment (Doc. 630).   Prosecutor Gregorich

6  relied on the Department of Corrections records to demonstrate probable cause, and Judge Culpepper

7  specifically found that each of these requirements  were met in his findings of fact.  Prosecutor Gregorich

8  did not falsify any information to show probable cause that Plaintiff was a sexually violent predator.

9      Accordingly, these two individuals are entitled to immunity and plaintiff's causes of action against

10  Judge Culpepper and Mr. Gregorich should be dismissed.

11  B. PERSONAL PARTICIPATION

12      Plaintiff must allege facts showing how individually named defendants caused or personally

13  participated in causing the harm alleged in the complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir.

14  1981).   A § 1983 suit cannot be based on vicarious liability alone, but must allege the defendants' own

15  conduct violated the plaintiff's civil rights.  City of Canton v. Harris, 489 U.S. 378, 385-90 (1989).  A

16  supervisor may be held liable only "if there exists either, (1) his or her personal involvement in the

17  constitutional deprivation, or (2) a sufficient causal connection between a supervisor's wrongful conduct

18  and the constitutional violation."  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th cir. 1991),

19  cert. denied 502 U.S. 1074 (1992).

20      Defendants Barnes, Acker, Roberts, Richards, and Sziebert each argue plaintiff has failed to

21  articulate how any of them have personally participated in or personally caused a violation of plaintiff's

22  U.S. Constitutional or federally protected civil rights.  After carefully reviewing the record, specifically the

23  Complaint and plaintiff's opposition briefs  filed in response to the dispositive motions, the court must

24  agree that plaintiff has not shown how any of these defendants personally participated in causing plaintiff

25  any harm of constitutional magnitude.  In support of this conclusion, the Court should consider the

26  following findings:

27      (i) Defendant Keith (sic) Barnes is named in the Complaint's caption, but he is not listed in the

28  section entitled, "IV. Parties" of the Complaint.  Defendant Barnes is not mentioned in any detail in the

1   Complaint, and as explained in defendants' motion (Doc. 63), it appears Mr. Barnes' involvement with Mr.

2   McGary was limited to a 10-minute "one time meeting regarding Less Restrictive Alternative (LRA)

3   confinement" several years ago.

4       (ii) Defendant Acker's and Roberts' are both employees of the Washington State Department of

5   Corrections.  Like Defendant Barnes, they are only mentioned in the "IV. Parties" section of Plaintiff's

6   Complaint, and Mr. McGary does not make any specific allegations against either of these two defendants.

7   Mr. McGary states that as employees of the Department of Corrections Defendants Acker and Roberts are

8   involved in the review of sex offender files and/or "RCW 71.09" referrals.   Plaintiff does not allege that

9   Defendants Acker or Roberts were involved with the review or referral of his files.

10      In addition to the failure to allege any specific personal participation with respect to Defendant

11  Acker or Roberts, the court notes that any claims against employees of the Department of Corrections

12  based on events or actions prior to June 2002 would most likely be subject to dismissal based on the

13  applicable 3-year statute of limitations.  Based on the information provided by defendants, it appears Mr.

14  McGary's case was evaluated by Defendants Acker and/or Roberts in 1998, shortly before he was released

15  from the custody of the Department of Corrections (on April 6, 1998).  The Complaint in this matter was

16  filed on or about June 7, 2005, well after the expiration of the statute of limitations, which would generally

17  only include allegations related to events occurring since June 2002.

18      (iii) Defendants Richards, Sziebert and McClung are each named in the Complaint as employees of

19  the Department of Social and Health Services at the SCC, and each of these defendants are properly

20  licensed physicians or psychologists.  Plaintiff alleges Defendant Richards, as the Superintendent of the

21  SCC, is responsible for his care and treatment.   Plaintiff alleges Defendants Sziebert and McClung are

22  directly responsible for his care and treatment at SCC.

23      In his Complaint, Plaintiff mentions Defendant McClung three times.  The first time Plaintiff

24  mentions Defendant McClung, he states, "However, everybody was attempting to make Plaintiff lose his

25  custody and get a anti-psychotic injuction (sic).  Defendant Mark McClung wrote an order requiring

26  custody to give Plaintiff a (sic) involuntary medication shot without a harper (sic) hearing and in light of

27  my possible heart condition, inwhich (sic) he was aware."  The next mention of Defendant McClung

28  indicates plaintiff was moved to a "high management, none (sic) treatment, special needs unit" based on the

1    advice of Dr. Sziebert and Dr. McClung.   Plaintiff's final mention of Dr. McClung simply states that

2    Plaintiff does not recall or remember Dr. McClung's testimony at the revocation hearing held before Judge

3    Culpepper.   The court notes that Dr. McClung, through counsel of record, has appeared in this matter, but

4    has not made a motion to dismiss the complaint or joined in any of the three motions being addressed by

5    the court in this report.   Nonetheless, for reasons stated below, the Court should dismiss Plaintiff's

6    complaint and the causes of action made against Dr. McClung.

7           Plaintiff's allegations regarding Dr. Sziebert are more detailed than the allegations made with

8    respect to Dr. McClung.   It is clear that Plaintiff's complaint against Dr. Sziebert involves the revocation of

9    Mr. McGary's release to a Less Restrictive Alternative (LRA)  living arrangement within the Secure

10   Community Transition Facility (SCTF).

11          It appears Plaintiff's adjustment to the LRA was difficult.   He was released to LRA in September

12   2004, but voluntarily returned to the SCC in early March 2005.   Plaintiff states that he decided he did not

13   want to take anti-psychotic medication.   It appears a conflict over his medication arose, as indicated by the

14   allegations made against Dr. McClung and the involuntary medicating of Plaintiff.   Plaintiff states Dr.

15   Sziebert testified at an  "involuntary medication hearing" that Plaintiff had experienced some psychotic

16   symptoms while at the SCTF.   Dr. Sziebert specifically stated that Plaintiff was "beginning to demonstrate

17   signs of decompensation," "beginning to become more suspicious of others,""starting to have

18   hallucinations,"  and "beginning to have some concerns about people stealing from him."   Dr. Sziebert

19   expressed his desire to have Mr. McGary use Zypreza to reduce his psychotic symptoms and to therefore

20   avoid involuntary medication.   Plaintiff ultimately challenged the revocation of his LRA, and a state court

21   hearing was concluded on April 14, 2005.   Judge Culpepper concluded the revocation was proper given

22   Plaintiff's refusal to take his anti-psychotic medication and Plaintiff's refusal to work with his treatment

23   provider, Dr. Brian Judd.

24          It is unclear as to what claims or causes of action are based on the allegations made against Dr.

25   Richards, Dr. Sziebert, or Dr. McClung.   The Complaint does not state with any specificity what federal

26   civil right or what constitutional right any of these defendants violated or caused to be violated.

27          Plaintiff's allegations against these defendants should be dismissed on the basis that the acts alleged

28   were made in a supervisory role without any personal participation in the alleged wrongful behavior.   For

instance, Dr. Richards is clearly named only in his supervisory capacity and Plaintiff has not alleged any personal participation of Dr. Richards.  Moreover, Dr. Sziebert and Dr. McClung's acts also appear to be purely in a supervisory or managerial role regarding the medical treatment of Mr. McGary.  Dr. Sziebert was a treatment provider and expressed his desires and medical opinions regarding Mr. McGary, but it was Dr. Judd who was personally interacting with Mr. McGary while he was in LRA housing, and it was Dr. Judd, whose treatment Mr. McGary refused.  Moreover, Mr. McGary states on several instances that although Dr. McClung and Dr. Sziebert each believe the use of anti-psychotic medication is necessary, he had not taken any such medication since March 17, 2005.  The statements and opinions made by Dr. McClung and Dr. Sziebert regarding Plaintiff's need to use anti-psychotic medication appear only to be advice or recommendations made by treatment providers at SCC.   Plaintiff does not allege or show that he has been medicated against his will.  The court notes, contrary to Plaintiff's statement that he was denied a hearing on the issue of involuntary medication, the issue of his refusal to take anti-psychotic medication was the subject of a notification and a hearing, attended by his attorney, F McNamara Jardine; Al McGlaughlin head of treatment and care; Mark Seling, psychologist; Becky Denny, legal coordinator; Reginald Woods, RRC 3; Leslie Sziebert, psychiatrist; Douglas Melton, RRC 3; and Richards Stokes, psychologist.

Plaintiff's claims and causes of action made against Defendants Barnes, Acker, Roberts, Richards, McClung and Sziebert should be dismissed for failure to show how any of these defendants personally participated in a violation of plaintiff's federally protected civil rights.  Plaintiff has failed to state a cognizable claim against any of these six defendants.

*C. PLAINTIFF'S CHALLENGE TO HIS CONFINEMENT AT THE SCC MUST BE REJECTED*

Plaintiff's Complaint challenges the revocation of his LRA and the legitimacy of his involuntary civil commitment  to the SCC.  The challenge to the state's custody of his person must be the subject of a petition for writ of habeas corpus, prior to bringing a claim for damages in a § 1983 lawsuit.

In June 1994, the United States Supreme Court held that "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."  Heck v. Humphrey, 114 S.Ct. 2364, 2373 (1994).  The court added:

Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Id. at 2374.

It is clear to the court that Mr. McGary is raising issues in his § 1983 complaint which necessarily calls into question that validity of his current civil commitment to the SCC. Plaintiff states several times that he has pursued a writ of habeas corpus, C05-5317RBL (the Court dismissed the petition without prejudice, concluding petitioner had not properly exhausted his claims). Plaintiff has failed to show the court that his commitment to SCC has been successfully reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. Under Heck, plaintiff's § 1983 claims have not yet accrued, and therefore, the claims based on his commitment and/or revocation of his LRA are not cognizable.

CONCLUSION

Based on the foregoing discussion the Court should grant each of the three dispositve motions presented. In addition the Court should also dismiss plaintiff's claims and actions brought against Defendant Mark McClung.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August, 2006**, as noted in the caption.

DATED this 31st day of July, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge